# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1810

_____

| | |
|---|---|
| Barbara Rodgers, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Southern District of Iowa. |
| City of Des Moines; Ronald Wakeham, | * |
| | * |
| Appellees. | * |

_____

Submitted: November 14, 2005
Filed: January 25, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Barbara Rodgers (Rodgers) brought this action against the City of Des Moines (City) and Des Moines Fire Chief Ronald Wakeham (Chief Wakeham) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213; the Iowa Civil Rights Act, Iowa Code Chapter 216; and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, claiming sex discrimination, sexual harassment, retaliation, and hostile

work environment. The district court[1] granted the City and Chief Wakeham summary judgment on all of Rodgers's claims. Rodgers appeals only the district court's entry of summary judgment on her claim under the FMLA. For the reasons set forth below, we affirm.

## I.     BACKGROUND

In 1976, Rodgers began working in the City's fire department as a police information typist. Over time, Rodgers became an administrative analyst.

Rodgers requires periodic medical treatment and absences from work due to fibromyalgia, diabetes, hypertension, and hypothyroidism. In May 2000, the City granted Rodgers intermittent FMLA leave. On June 1, 2000, Assistant Fire Chief Doug Rubin (Assistant Chief Rubin) completed Rodgers's annual performance evaluation, rating Rodgers's "observance of working hours" as "improvement required." Assistant Chief Rubin explained Rodgers's "[s]ick leave taken over the past 12 months well exceeds City average, thereby reducing [Rodgers]'s availability to support staff during normal working hours." Assistant Chief Rubin also noted there was "[n]o abuse suspected."

On March 19, 2001, Chief Wakeham issued a memo to Rodgers entitled "New Policies." The memo clarified and modified Rodgers's job duties, including (1) prohibiting Rodgers from making purchases in excess of $100 without Chief Wakeham's "direct written permission," (2) requiring Rodgers to provide monthly invoice status reports to Chief Wakeham, (3) requiring Rodgers to submit all travel and training requests to Chief Wakeham for review and approval, (4) requiring Rodgers to provide a "written petty cash reconciliation report" to Chief Wakeham "prior to submittal to Finance," (5) setting a particular time for Rodgers to take her

---

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

lunch, and (6) requiring Rodgers to keep her files "in a neat and orderly manner, properly labeled and easily identified," so in the event Rodgers was absent, Chief Wakeham would "be able to find files and locate pertinent information regarding invoices, budgeting, contracts, etc."

In April 2001, Rodgers took medical leave for four weeks due to fibromyalgia. When Rodgers returned to work, Chief Wakeham removed the petty cash management responsibility from Rodgers's duties.

On January 8, 2002, Chief Wakeham gave Rodgers a letter summarizing Rodgers's attendance record for the year 2001. Rodgers was absent for all or part of 115 work days out of the year's 249 work days. Chief Wakeham noted Rodgers (1) took FMLA leave on 75 occasions, totaling 356.25 hours, which time was "protected under the current federal law"; (2) missed work on 40 occasions, totaling 223.25 hours, which absences "were not typically scheduled absences with advance notification"; and (3) was eligible for an additional 145.75 hours of FMLA leave. Chief Wakeham advised Rodgers "to take whatever steps are necessary to demonstrate significant and sustained improvement in attendance."

Rodgers applied for future FMLA leave on January 17, 2002. The next day, the City denied Rodgers's request, because (1) Rodgers altered some language on the application form "in a manner that may restrict the City from obtaining necessary medical information regarding [Rodgers's] illness," and (2) Rodgers's "request for leave time is too vague in nature." The City noted "[t]he physician's statement cites periodic necessary medical follow up, however it fails to give . . . enough information to be able to determine what kind of work schedule may be contemplated as a result." The City directed Rodgers "to submit a more specific declaration from [Rodgers's] physician regarding necessary absences for periodic medical follow up," and to "resubmit [Rodgers's] request on the proper form without making any alterations whatsoever."

On February 1, 2002, Rodgers submitted another application for FMLA leave based on "Intermittent-Chronic Conditions." On February 7, the City denied Rodgers's application, citing "the vagueness of the stated period of [Rodgers's] anticipated leave." The City directed Rodgers to "provide specific periods of time for [Rodgers's] absences."

On March 4, 2002, Rodgers sent an e-mail message to Chief Wakeham stating, "If you could provide specific questions to address your concerns, I can forward them to my physician and have him respond." On March 19, 2002, Rodgers wrote another e-mail message to Chief Wakeham advising she had not received a response to her March 4 e-mail message and requesting a response.

On March 25, Chief Wakeham gave a letter to Rodgers stating that in light of Rodgers's vague leave request, her doctor visits would be handled like any other doctor appointment:

> Your medical provider states that periodic follow-up visits may be necessary for medical treatment; no specific schedule is outlined. It seems that traditional city leave policies will work well for such appointments. While it is desirable that medical appointments be scheduled at a time which will least interrupt business operations, I am willing to work with you in scheduling your time around reasonable advanced requests for leave to attend to such periodic visits.

The letter also restated the City's interest in a specific leave request:

> There is a need for predictability to the timing or extent of the leave. An open-ended grant of time off does not permit the department to have the necessary predictability of available staff to accomplish the necessary work.

The letter further stated, "If you are able to provide a firm framework of treatment schedules and anticipated absences associated with the treatment regimen, I can once again review your request."

On June 3, 2002, Rodgers submitted a third application for future intermittent FMLA leave. In response, the City arranged for a second medical opinion to review the medical necessity of Rodgers's requested leave.

Dr. John D. Kuhnlein (Dr. Kuhnlein) evaluated Rodgers on August 9, 2002, for the purpose of giving a second opinion and concluded, in relevant part, as follows:

> I believe she has met the criteria for the Family Medical Leave Act benefits. The fibromyalgia is unpredictable with regard to the timing of her flares. She cannot predict the timing of the flares of her hypothyroidism. She may need time away from the work place on an unpredictable basis to deal with her medical problems.

On September 13, 2002, after receiving Dr. Kuhnlein's report, the City approved Rodgers's request for future intermittent FMLA leave.

Six months later, in March 2003, due to a City-wide reduction in workforce to achieve a balanced City budget, the City eliminated Rodgers's administrative analyst position in the fire department and transferred her to a newly created position in the public works department. Rodgers retained her same pay and benefits.

On August 7, 2003, Rodgers sued the City. Although the City never denied Rodgers any leave time she requested for illness or doctor appointments, Rodgers believes the City made her "feel [she] should not have taken that time off."

Public Works Director William Stowe (Director Stowe), on November 1, 2004, encouraged Rodgers to improve her attendance at work. On December 3, the City

held a pre-disciplinary hearing regarding Rodgers's absences from work. On December 7, Director Stowe issued Rodgers a written reminder regarding Rodgers's frequent absences from work, which, in Director Stowe's opinion, precluded Rodgers from meeting an essential function of her job.

Rodgers took approximately one month of FMLA leave, because of her fibromyalgia, beginning in December 2004. Rodgers returned to work on January 18, 2005. On January 24, 2005, Director Stowe temporarily assigned Rodgers to the public works department's call center. The City stated Rodgers's wages and benefits would not be reduced, and Rodgers may return to her administrative analyst duties when her intermittent FMLA leave ends.

On March 1, 2005, the district court granted summary judgment to the City on all of Rodgers's claims. Rodgers appeals the district court's judgment on her FMLA claim, arguing the district court (1) ignored facts supporting Rodgers's claim, (2) erred in holding emotional distress damages are not available under the FMLA, (3) abused its discretion in not awarding equitable relief, and (4) erred in not considering Rodgers's allegations the City continued to violate the FMLA after Rodgers filed her complaint.

## II.    DISCUSSION

We review de novo a district court's entry of summary judgment. Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005) (citing Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002)). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Shanklin, 397 F.3d at 602 (quotation omitted). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading, but the [nonmoving] party's response, by affidavits or as otherwise provided

in [Federal Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A.    District Court's Statement of Facts

Rodgers argues the district court "completely failed to mention numerous facts that supported [Rodgers]'s claims," and "[q]uite frankly, the entire tone of the court's recitation of facts sounds like it was written by defense counsel." After listing twenty-one ignored facts, Rodgers's entire argument supporting the inclusion of these facts is as follows:

> These are not immaterial or tangentially relevant facts. These are facts which directly demonstrate the ongoing and serious nature of Defendants' FMLA violations and which prove Plaintiff's case. Plaintiff met her burden to raise these facts and provided ample support in the record for them.
>
> The court's failure even to mention these facts speaks volumes about the court's failure to consider them.

We reject Rodgers's challenge to the district court's statement of facts for several reasons. First, Rodgers's challenge to the district court's factual findings is underdeveloped. Rodgers fails to direct us to specific record locations supporting her challenge. Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments. Cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam). Rodgers also fails to explain how these allegedly omitted facts establish a material question of fact, or how any of these various facts might prove the City or Chief Wakeham violated the FMLA. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial") (quotation and citation omitted).

Second, even if Rodgers did adequately develop her challenge to the district court's recitation of the facts, the district court did include several of the allegedly omitted facts in the court's recitation of the facts. Third, some of Rodgers's alleged facts are irrelevant, some inaccurately characterize the record, and some improperly advance legal conclusions. Finally, none of Rodgers's facts were material to the district court's stated bases for granting summary judgment. Rodgers failed to meet the requirement of Rule 56(e) to "set forth specific facts showing that there is a genuine issue for trial." Accordingly, we find the district court accurately and sufficiently recited the evidence of record, did not omit material facts, and did not improperly weigh the evidence.

### B.    Emotional Distress Damages

Rodgers contends the district court erred in holding emotional distress damages are not recoverable under the FMLA. Rodgers relies on our decision in Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 496 (8th Cir. 2002), in which we affirmed a verdict awarding compensatory damages under the FMLA, including damages for "mental anguish, loss of dignity, and other intangible injuries." However, the reference to emotional distress damages in Duty is probably mistaken and not sound law in light of the Supreme Court's decision in Nevada Department of Human Resources v. Hibbs, 538 U.S. 721, 739-40 (2003). The Court in Hibbs explained, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." Id. (citation omitted).

Our sister circuits who have addressed this issue have held emotional distress damages are not recoverable under the FMLA. These courts have reasoned that because the FMLA specifically lists the types of damages for which an employer may be liable and the list includes only the actual monetary losses of the employee, the FMLA does not permit recovery for emotional distress damages. See Montgomery v. Maryland., 72 F. App'x 17, 19-20 (4th Cir. 2003) (per curiam) (unpublished); Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1277 (10th Cir. 2001); Graham

v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir. 1999); cf. Nero v. Indus. Molding Corp., 167 F.3d 921, 930 (5th Cir. 1999) (not permitting consequential damages).

The FMLA and its accompanying regulations do not expressly provide for emotional distress damages. See 29 U.S.C. § 2617(a)(1)(A); 29 C.F.R. § 825.400(c). The FMLA only permits recovery for "wages, salary, employment benefits, or other compensation denied or lost," and when such benefits are not denied or lost, an eligible employee may recover "any actual monetary losses sustained . . . as a direct result of the violation, such as the cost of providing care." 29 U.S.C. § 2617(a)(1)(A)(i)(I), (II). We thus conclude emotional distress damages are not available under the FMLA, and affirm the district court's denial of emotional distress damages.

### C.   Equitable Relief

Rodgers argues the district court abused its discretion in refusing to award equitable relief. Specifically, Rodgers contends the City interfered with her right to take FMLA leave by discouraging her from taking leave, including delaying the approval of her leave, disciplining her for taking leave, and stripping her of her job duties for taking leave. We review a district court's denial of equitable relief for an abuse of discretion. Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 715 (8th Cir. 2004).

"Among other prohibitions, [the] FMLA prohibits an employer from interfering with an employee's exercise of her FMLA rights." Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1090 (8th Cir. 2001). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). An employer who interferes with an employee's FMLA leave "shall be liable to any eligible employee affected" for compensatory damages and "for such equitable relief as may be appropriate, including

-9-

employment, reinstatement, and promotion." Id. § 2617(a)(1). The FMLA, however, "provides no relief unless the employee has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). "The remedy is tailored to the harm suffered." Id.

The City took no adverse employment action against Rodgers, and the undisputed evidence shows Rodgers actually received her requested FMLA leave. Because Rodgers suffered no prejudice, the FMLA provides no equitable relief, and the district court did not abuse its discretion in granting summary judgment on this claim.

### D.     Unpled Allegations

Finally, Rodgers contends the district court erred in failing to consider her allegation the City continued to violate the FMLA after Rodgers filed her complaint. Rodgers's complaint alleged the City violated the FMLA in 2002, and Rodgers never sought leave to amend her complaint to allege the City violated the FMLA in 2004 and 2005. Accordingly, the district court properly refused to consider unpled allegations. See N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."). The district court did not abuse its discretion or commit any error of law.

## III.     CONCLUSION

We affirm the district court's grant of summary judgment.

_____