# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3332

_____

Ellen Quinn,                                    *
                                                *
                    Appellant,                  *
                                                *    Appeal from the United States
        v.                                      *    District Court for the
                                                *    District of Minnesota.
St. Louis County, a municipal                   *
corporation,                                    *
                                                *
                    Appellee.                   *

_____

Submitted: May 12, 2011
Filed:  September 6, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ellen Quinn sued her employer, St. Louis County, under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.43, and the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-54, and asserted other state common law claims including breach of employment contract. Quinn appeals the dismissal of her breach of contract claim with prejudice, the denials of her motions for leave to amend her complaint, the denial of her motion for reconsideration, and the adverse grant of

summary judgment on her MHRA and FMLA claims by the district court.[1]  We affirm.

I.

In February 2007, Quinn, a St. Louis County employee, reported that she had been sexually harassed by Steve Raukar, a County Commissioner.  The County launched an investigation into the charges.  Quinn and the County eventually negotiated a settlement agreement in which Quinn released the County from any legal liability in exchange for the County's assurance that it would not terminate her other than for just cause for seven years.

After Quinn complained of sexual harassment, she experienced stress, anxiety, and depression.  She took FMLA leave from May 14, 2007, to August 10, 2007, on the advice of her physician.  When Quinn returned to work, several incidents occurred that led Quinn to believe the County was retaliating against her for reporting sexual harassment.  County employees accused her of lying about the sexual harassment, her office was moved, and after she painted her office a custom color it was immediately repainted white.  In addition, Quinn testified that she was excluded from attending out-of-state marketing meetings and workshops and from changing the County's video and sound systems, even though she was involved with these tasks in the past.  Quinn also recounted that throughout the fall of 2007, several County Commissioners were quoted in the local media as challenging the veracity of her sexual harassment complaint.

In early 2008, the County hired Alan Mitchell, the attorney who had represented Commissioner Raukar during the investigation into Quinn's charges of sexual

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

-2-

harrassment, as County Administrator and Quinn's boss. Soon after, Quinn visited her doctor because she felt anxious and depressed about working with Mitchell. Quinn recalled that during a meeting, Mitchell called her a "problem employee," stated that they did not "need to go out for dinner or for drinks or on a date to get along," and instructed her to "work hard." Quinn requested that the Deputy County Administrator be her supervisor rather than Mitchell, but Mitchell refused.

Over the next few months, Mitchell accused Quinn of tardiness in turning in a project that she had turned in on time, yelled at her in front of her coworkers during a meeting, indicated that she might not be granted FMLA leave if she requested it, and warned her in writing to report to work on time every day and obtain advance approval for any absence.

In March 2008, Quinn's anxiety and depression had increased to the point that her doctor advised that she take leave from work. Quinn asked for and received an adjusted work schedule of three days per week. Quinn stopped reporting for work in early April 2008, using sick leave until May 14, when she was eligible for FMLA leave. In August 2008, Mitchell informed Quinn that her FMLA leave had expired and requested that she obtain an independent medical examination to confirm her need for full-time, non-FMLA leave. In September 2008, an independent physician confirmed that Quinn was unable to work for the County, and Mitchell authorized Quinn's use of her remaining sick leave. In December 2008, Mitchell received a letter from Quinn's doctor stating that she would never be able to return to work for the County.

In May 2009, Quinn sued the County, asserting claims for MHRA reprisal discrimination, FMLA interference, FMLA retaliation, breach of contract, and other

claims.[2] The County moved to dismiss Quinn's claim for breach of her employment contract under Federal Rule of Civil Procedure 12(b)(6). Quinn responded, asking the court to either deny the motion to dismiss on the merits or allow Quinn leave to amend her complaint. The district court denied leave to amend and granted the County's motion, finding that both Quinn's original complaint and her first proposed amended complaint failed to state a claim for breach of her employment contract, and dismissing Quinn's claim with prejudice. Quinn moved for leave to amend her complaint a second time, which the district court denied. Quinn then moved for reconsideration, requesting that the court either allow her to amend her complaint or amend its order dismissing her claim without prejudice, which the district court denied. The County moved for summary judgment on Quinn's MHRA and FMLA claims. The district court granted the County's motion.

On appeal, Quinn raises several issues with respect to the district court's rulings related to her breach of employment contract claim, and she challenges the district court's adverse grant of summary judgment.

II.

Quinn attempts to revive her breach of employment contract claim on several grounds: (1) her original complaint sufficiently stated a claim under Federal Rule of Civil Procedure 12(b)(6), and the district court required her complaint to include facts beyond that required by Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); (2) in the alternative, the district court should have dismissed her claim without prejudice rather than with prejudice; (3) the district court abused its discretion in denying her first and second motions to amend her complaint; and (4) the district court abused its discretion in denying her motion for reconsideration.

---

[2]Quinn also sued for disability discrimination under the MHRA, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Quinn does not appeal the dismissal of these claims.

We do not reach the merits of Quinn's arguments because any error with respect to the dismissal of Quinn's breach of employment contract claim was harmless. See Fed. R. Civ. P. 61 (requiring all errors and defects that "do not affect any party's substantial rights" to be disregarded). In order to establish breach of employment contract in Minnesota, an employee must show that she was discharged from employment. Pribil v. Archdiocese of St. Paul & Minneapolis, 533 N.W.2d 410, 412 (Minn. App. 1995). If the employee was not actually discharged—as here, where Quinn resigned from her employment with the County—the employee may meet the element by showing constructive discharge, which occurs when the employer creates intolerable working conditions with the intent of forcing the employee to quit. Id.

In addition to being an element of Quinn's breach of employment contract claim, constructive discharge was also one of Quinn's theories of recovery on her MHRA reprisal claim. See Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 418 (8th Cir. 2010) (acknowledging constructive discharge as a theory of recovery for retaliation). As discussed in detail infra, Quinn failed to generate a genuine issue of fact as to constructive discharge in the context of her MHRA reprisal claim. See infra III(A) at 9-10. Discovery revealed that no genuine issue of fact exists as to whether the County constructively discharged Quinn, and as such, even if Quinn's breach of employment contract claim had survived the County's motion to dismiss, it would not have survived summary judgment. Accordingly, any error that occurred at the motion to dismiss stage was harmless in the unusual circumstances of this case, and we affirm the dismissal. See Fed. R. Civ. P. 61; Wright v. Miller, 96 F.3d 1445 (5th Cir. 1996) (unpublished per curiam) (holding that error in dismissing claim under 12(b)(6) harmless because summary judgment was appropriate on all claims); cf. Gibb v. Scott, 958 F.2d 814, 816-17 (8th Cir. 1992) (district court's failure to convert 12(b)(6) motion to summary judgment motion when considering matters outside pleadings may be harmless when record supports summary judgment), and Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1382-83 (Fed. Cir. 2002) (suggesting that treating error in dismissing claim on 12(b)(6) as harmless is appropriate because a 12(b)(6) motion can

be converted to summary judgment motion under federal rules). But see Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420-21 (6th Cir. 2000) (rejecting argument that district court's error in denying leave to amend was harmless because it would have granted summary judgment on claim eventually based on the later developed record).

## III.

Quinn also challenges the district court's grant of summary judgment dismissing her MHRA reprisal claim and her FMLA interference and retaliation claims. We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor. Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." Id. We may affirm the district court's ruling for any reason that the record supports. Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000).

A. MHRA Retaliation

Under the MHRA, employers may not retaliate against employees for reporting sexual harassment. See Minn. Stat. § 363A.15.[3] In order to establish a prima facie case of retaliation under the MHRA,[4] an employee must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3)

---

[3]In interpreting the MHRA, we apply Title VII standards. See Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1074 n.2 (8th Cir. 2010); see also Bahr v. Capella Univ., 788 N.W.2d 76, 83 (Minn. 2010) (stating that Minnesota courts "apply law developed in federal cases arising under Title VII" in construing the MHRA).

[4]See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

a causal connection exists between the materially adverse employment action and the protected conduct. Fercello, 612 F.3d at 1077-78. The County moved for summary judgment in part[5] based on Quinn's failure to establish an issue of fact on whether she suffered a materially adverse employment action.

An employee suffers a materially adverse employment action in the context of a MHRA retaliation claim when the employer engages in conduct that would dissuade a reasonable employee from making a discrimination claim. Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 787-89 (8th Cir. 2007), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43, 1058 (8th Cir. 2011) (en banc). The materially adverse employment action element may be met by an employer's single act "that produces a material employment disadvantage," such as termination, a cut in pay or benefits, or a change that undermines an employee's future career prospects. Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999). The element may also be met by the "cumulative effect" of an employer's alleged retaliatory conduct, if the acts, considered in the aggregate, would dissuade a reasonable employee from reporting discrimination. Fercello, 612 F.3d at 1083-84; Devin, 491 F.3d at 787-88. Similarly, the materially adverse employment action element may be met by a series of acts by the employer that, considered collectively, amount to constructive discharge. See Helton v. Southland Racing Corp., 600 F.3d 954, 961 (8th Cir. 2010).

After carefully reviewing Quinn's response to the County's motion for summary judgment, we conclude that Quinn did not adequately explain to the district court why the disputed facts she listed were material to her theory that the County's actions, either individually or in the aggregate, would have dissuaded a reasonable

---

[5]The County also moved for summary judgment on the basis that Quinn's claim was barred by the one-year statute of limitations for reprisal claims, see Minn. Stat. § 363A.28, subd. 3, and the district court agreed. Because we affirm on other grounds, we do not reach the statute of limitations issue.

employee from reporting sexual harassment. A party cannot defeat a summary judgment motion by asserting "the mere existence of *some* alleged factual dispute between the parties"; the party must assert that there is a "*genuine* issue of *material* fact." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Fed. R. Civ. P. 56(a). In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying "facts that might affect the outcome of the suit." Anderson, 477 U.S. at 248. The nonmoving party must then categorize the factual disputes in relation to the legal elements of her claim. Id.; Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006).

In order to survive the County's motion for summary judgment, Quinn needed to explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art. Doe ex rel Thomas v. Tsai, 2011 WL 3300686, at *3 (8th Cir. Aug. 3, 2011); Holland v. Sam's Club, 487 F.3d 641, 644 n.5 (8th Cir. 2007). Quinn failed to provide meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove Quinn's MHRA reprisal claim at trial. Rodgers, 435 F.3d at 908. Specifically, Quinn did not argue that the County's actions, either individually or in the aggregate, would have dissuaded a reasonable employee from reporting sexual harassment. See Devin, 491 F.3d at 787-88 (providing reasonable employee standard). Instead, Quinn's responsive motion merely recounted her factual allegations and declared them "reprisal." See Rodgers, 435 F.3d at 908 (conclusory statements insufficient to establish material question of fact).

The only non-conclusory explanation we glean from Quinn's motion as to why the County's acts, either individually or in the aggregate, would have dissuaded a reasonable employee from reporting sexual harassment is the assertion that Quinn *felt* harassed. But the standard is objective—whether the employer's actions would have dissuaded a reasonable employee from reporting illegal conduct. Quinn's subjective

views are legally inconsequential. Fercello, 612 F.3d at 1081. Quinn simply did not frame her argument before the district court using the appropriate, objective standard.[6]

Quinn also alleged that the County's actions amounted to constructive discharge in attempting to establish a materially adverse action. See Helton, 600 F.3d at 961. In support of her constructive discharge theory, Quinn cited applicable law and employed meaningful analysis. To prove constructive discharge, "a plaintiff must show (1) a reasonable person in [her] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." Fercello, 612 F.3d at 1083 (quoting Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007)). A plaintiff may satisfy the intent requirement through evidence that her resignation was a reasonably foreseeable consequence of the employer's actions. Id. Quinn argued that a reasonable juror could conclude from the disputed facts she listed that her working conditions were intolerable and that the County intended to force her to quit.

Although Quinn used the appropriate legal standard to attempt to establish a material question of fact, no reasonable juror could conclude from the record facts that the County intended to force Quinn to quit or that her resignation was a reasonably foreseeable consequence of the County's actions. To the contrary, the County attempted to accommodate Quinn's illness by adjusting her work schedule and allowing her to take time off to recover. See Fercello, 612 F.3d at 1083 (granting time off and accommodation of work schedule show intent to maintain employment relationship); Devin, 491 F.3d at 790 (offering to discuss plaintiff's options in order to retain plaintiff as employee undercuts constructive discharge claim). In addition, after Quinn took full-time leave, the County consistently encouraged Quinn to return to work. For example, in a letter from the County to Quinn, the County wrote, "While

---

[6]To the extent Quinn raises additional arguments on appeal, she waived these arguments by failing to present them to the district court. Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007).

we want you to return to work healthy, we do want you to return to work. You have been a valued employee of St. Louis County and we have critical public information work which needs to be done. We will continue to work with you to find a schedule that would accommodate your needs and also fulfill the County's requirements for your job performance." App'x at 96. Similarly, in an email from Mitchell to Quinn, he wrote, "I must reiterate that the clear desire of St. Louis County is to have you back at your job performing the service that you were originally hired for." Id. at 101. The record indicates that the County intended to maintain an employment relationship with Quinn, and no reasonable factfinder could conclude that the County intended to force Quinn to quit. See Anda v. Wickes Furniture Co., 517 F.3d 526, 534 (8th Cir. 2008) (holding that plaintiff failed to generate issue of fact on employer's intent to force resignation when employer expresses desire for plaintiff to return to work). Accordingly, Quinn's constructive discharge theory fails as a matter of law.

Finally, we reject Quinn's perfunctory invitation to reverse because the district court ignored facts and inappropriately resolved issues of fact. Quinn's brief lists various facts that the district court allegedly ignored, asserts that the district court resolved certain issues of fact in the County's favor, and concludes that a genuine issue of material fact exists. But Quinn neither explains why the facts to which she refers are material, Tsai, 2011 WL 3300686 at *3, nor categorizes the factual disputes in relation to the legal elements of her claim, Anderson, 477 U.S. at 247-48.

Because Quinn failed to generate an issue of fact as to whether she suffered a materially adverse employment action, summary judgment was appropriate as to Quinn's MHRA retaliation claim.

B. FMLA Interference

Quinn alleges that the district court erred in granting summary judgment in favor of the County on her FMLA interference claim because the court failed to

adequately analyze her claim. Specifically, Quinn argues that the district court did not consider the fact that the County discouraged her from taking FMLA leave and refused her requests before approving them.

Under the FMLA, employers are prohibited from interfering with, restraining, or denying an employee's exercise or attempted exercise of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1). Quinn is right that FMLA interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," as well as "manipulation by a covered employer to avoid responsibilities under [the] FMLA." 29 C.F.R. § 825.220(b). However, the employee must also show that the employer denied the employee entitlements under the FMLA. Wisbey v. City of Lincoln, Neb., 612 F.3d 667, 675 (8th Cir. 2010), abrogated on other grounds by Torgerson, 643 F.3d at 1042-43, 1058. Quinn does not contest the district court's finding that she received the full twelve weeks of FMLA leave to which she was entitled each year she requested it. See 29 U.S.C. § 2612(a)(1) (providing that eligible employees are entitled to twelve weeks of medical leave each year). Accordingly, summary judgment was properly granted on Quinn's FMLA interference claim.

C. FMLA Retaliation

Quinn also argues that the district court erred in granting summary judgment in favor of the County on her FMLA retaliation claim. An employer may not retaliate against an employee for exercising her FMLA rights. 29 U.S.C. § 2615(a)(2).[7] "To

---

[7] Because the County does not challenge it, we accept Quinn's characterization of her contention that the County "retaliated against her for the exercise of [her FMLA] rights" as a FMLA retaliation claim under 29 U.S.C. § 2615(a)(2), Opposition Motion at 37. We note, however, that we have previously indicated that when an employee claims she suffered an adverse employment action because she exercised her rights under the FMLA, the claim may be more appropriately analyzed under 29 U.S.C. § 2615(a)(1), than under 29 U.S.C. § 2615(a)(2). See, e.g., Scobey v. Nucor Steel-Ark., 580 F.3d 781, 790 n.9 (8th Cir. 2009) ("Under the statute, retaliation for

establish a prima facie case of FMLA retaliation, an employee must show that she engaged in activity protected under the Act, that she suffered an adverse employment action by the employer, and that a causal connection existed between the employee's action and the adverse employment action." Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002).

Quinn failed to generate an issue of fact as to whether she suffered an adverse employment action. The only adverse employment action Quinn asserted in the context of her FMLA retaliation claim was constructive discharge,[8] which, as we have explained, the record does not support. See supra III(A) at 9-10.[9] Accordingly, summary judgment was properly granted on Quinn's FMLA retaliation claim.

---

exercising one's FMLA rights appears to be just one aspect of what is meant by 'interference,' not a separate claim." (citing Phillips v. Matthews, 547 F.3d 905, 913-15 (8th Cir. 2008) (Colloton, J., concurring))).

[8]Quinn makes additional arguments in support of an adverse employment action on appeal, but she waived these arguments by not presenting them to the district court. Holland, 487 F.3d at 644.

[9]Every circuit that has addressed the issue has held that the "materially adverse" standard for Title VII retaliation claims, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006), applies to FMLA retaliation claims. See, e.g., Cole v. Illinois, 562 F.3d 812, 816 (7th Cir. 2009) (requiring an adverse action giving rise to an FMLA retaliation claim to be "materially adverse," which means any action that would dissuade a reasonable employee from exercising her rights under the FMLA); McArdle v. Dell Prods., L.P., 293 F. App'x 331, 337 (5th Cir. 2008) (unpublished per curiam) (holding that Burlington Northern applies to retaliation claims under the FMLA; DiCampli v. Korman Cmtys., 257 F. App'x 497, 501 (3d Cir. 2007) (unpublished) (applying Burlington Northern to FMLA retaliation claim); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006) (same).

## IV.

For the foregoing reasons, we affirm the district court.

_____