# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3786

_____

Bonnie Hasenwinkel,

*Plaintiff - Appellant*,

v.

Mosaic; Kelly Thompson; Janet Fisher; Carol Mau,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 23, 2015
Filed: December 29, 2015

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Bonnie Hasenwinkel sued her former employer, Mosaic, for allegedly interfering with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and for allegedly terminating her employment in violation of

public policy. The district court[1] granted summary judgment in favor of Mosaic, and we affirm.

## I.

In reviewing the district court's grant of summary judgment, we describe the facts in the light most favorable to Hasenwinkel. Mosaic operates group-living and nursing-care facilities for adults with intellectual disabilities. In the summer of 2007, Mosaic hired Hasenwinkel as a registered nurse. Hasenwinkel's responsibilities included making rounds at six group homes, providing patient care, taking clients to doctors' appointments, and supervising the in-home nursing staff.

While employed by Mosaic, Hasenwinkel obtained leave under the FMLA on seven occasions. Hasenwinkel took continuous periods of FMLA leave to have knee surgery (March 4 to 17, 2010), treat depression (April 7 to 24, 2011), undergo a heart procedure (July 27 to August 7, 2011, and October 4 to October 16, 2011), and recover from neck surgery (November 23, 2011, to April 2, 2012). She also took intermittent FMLA leave to attend physical therapy (June 18, 2009, to June 17, 2010) and to care for her ailing father (January 10, 2011, to January 9, 2012).

Mosaic never rejected an explicit request for leave, but Hasenwinkel contends that on one occasion the company forced her to return from FMLA leave and then punished her for taking it. Hasenwinkel was absent on May 3 and 4, 2011, due to chronic depression. Hasenwinkel believes these absences were part of her FMLA leave, but there is no record of her asking permission to be absent. At the time, Hasenwinkel was approved only for intermittent FMLA leave to care for her father; her depression-related leave had ended two weeks earlier.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Supervisor Kelly Thompson called Hasenwinkel on May 5 and ordered her to return to work the next day. Hasenwinkel did not tell Thompson that she needed FMLA leave and did not ask Thompson for time off. When she returned on May 6, Mosaic gave Hasenwinkel an informal evaluation that noted her unapproved absences and a lack of follow through with patients. On her annual performance review the following month, Hasenwinkel received a "needs improvement" rating in one of forty evaluative categories. Hasenwinkel believes that the company gave her a negative informal evaluation and one unsatisfactory rating in retaliation for her using FMLA leave and with a design to make her quit.

Hasenwinkel also received three formal corrective actions that she claims were retaliation for taking FMLA leave. The most serious corrective action was an approximately one-month suspension for unsatisfactory work performance. Residents at a group home reported mold in the basement. Rather than report the mold to Mosaic, Hasenwinkel used a Petri dish to collect and culture the mold herself. After learning of the experiment, Mosaic placed Hasenwinkel on unpaid administrative leave effective August 31, 2011. An investigation concluded that Hasenwinkel failed to follow Mosaic's policy on reporting health concerns. Mosaic ultimately gave Hasenwinkel a written warning and reinstated her with backpay on September 27, 2011.

Hasenwinkel received other written warnings on July 26, 2011, for failing to train staff members and on October 17, 2011, for practicing on an expired nursing license and making numerous documentation errors. Hasenwinkel admits that these events occurred but disagrees that her punishments were appropriate or fair. In addition to these formal employment actions, Hasenwinkel reported being treated differently than other nurses and feeling "gang[ed] up on" due to her FMLA leave. Hasenwinkel says she was held to a different standard than the other nurses at Mosaic and received unfair scrutiny from supervisors who lacked medical training. She also experienced personal slights such as not being invited to lunch with other employees.

Hasenwinkel had neck surgery in November 2011 and never returned to work at Mosaic. Hasenwinkel exhausted her FMLA benefits when she was unable to return to work on January 8, 2012. Fortuitously, however, Mosaic changed its method for calculating FMLA accrual at the beginning of 2012, and Hasenwinkel thus was granted an additional twelve weeks of FMLA leave to which she would not have been entitled under the former method. Hasenwinkel could not recover during this second period of FMLA leave, and she again exhausted her FMLA benefits on April 2, 2012. Mosaic gave Hasenwinkel an additional ninety-day medical leave of absence, but she was still unable to work after ninety days. Consequently, Mosaic terminated her employment on July 2, 2012.

Hasenwinkel sued Mosaic under the FMLA and Iowa common law. Hasenwinkel claims that Mosaic interfered with her FMLA rights by denying her benefits to which she was entitled and discriminating against her for taking FMLA leave. She further claims that her discharge was in violation of the public policy of the FMLA. The district court granted summary judgment for Mosaic, concluding that Hasenwinkel received all of the benefits to which she was entitled under the FMLA, that the alleged discrimination did not result in an adverse employment action, and that the FMLA "preempt[ed]" her state-law claim.

We review the grant of summary judgment *de novo*, viewing the facts and drawing all inferences in the light most favorable to Hasenwinkel, the non-moving party. *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court may affirm on any basis supported by the record. *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 670-71 (8th Cir. 2013).

II.

The FMLA entitles eligible employees to twelve workweeks of unpaid leave during any twelve-month period under certain enumerated circumstances. 29 U.S.C. § 2612(a)(1). These circumstances include the birth or adoption of a child, the illness of an immediate family member, or the development of "a serious health condition that makes the employee unable to perform the functions of [her] position." *Id.* With certain exceptions not relevant here, an employee is entitled to be restored to the same or equivalent position as she held before the period of leave with equivalent terms and conditions of employment. *Id.* § 2614(a). If an employee exhausts FMLA leave and is "unable to perform an essential function of the position because of a physical or mental condition," the employer may terminate her employment. 29 C.F.R. § 825.216(c).

The Act also establishes prohibited acts and permits employees to enforce these prohibitions through a private right of action. 29 U.S.C. §§ 2615, 2617(a). As relevant here, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. *Id.* § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Any employer who violates the FMLA can be held liable for "actual monetary losses sustained by the employee," plus interest, costs, and attorneys' fees. 29 U.S.C. § 2617(a). Other types of damages, such as damages for emotional distress, are not available. *Rodgers v. City of Des Moines*, 435 F.3d 904, 908-09 (8th Cir. 2006).

A.

Hasenwinkel first claims that Mosiac interfered with her FMLA rights by denying her request for leave on May 5, 2011. To succeed, Hasenwinkel must show that she was eligible for FMLA leave, 29 U.S.C. §§ 2611(2), 2612(a)(1), that Mosaic

was on notice of her need for FMLA leave, 29 C.F.R. § 825.302 *et seq.*, and that the company denied her benefits to which she was entitled to under the FMLA. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 753 (8th Cir. 2011). Only the latter two requirements are disputed in this case.

Assuming for the sake of analysis that Mosaic was on notice of Hasenwinkel's need for FMLA leave, summary judgment was proper because Hasenwinkel exhausted her FMLA benefits. Hasenwinkel does not dispute that Mosaic allowed her to take twelve weeks of FMLA leave. In fact, Hasenwinkel received more than three times the amount of leave required by law: she received a full twelve weeks that expired on January 8, 2012, an additional twelve weeks under Mosaic's revised FMLA accrual policy, and another ninety days (or, nearly thirteen weeks) of medical leave prior to her termination. Hasenwinkel exhausted her FMLA benefits and thus has not been denied any entitlement under the statute. *Id.*

B.

Hasenwinkel next claims that Mosaic interfered with her FMLA rights by discriminating against her because she took FMLA leave. "The FMLA prohibits an employer from taking adverse action against an employee because that employee exercises the rights to which she is entitled under the FMLA." *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1090 (8th Cir. 2014). Where, as here, there is no direct evidence of discriminatory intent, an employee may prove intent indirectly under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013). To establish a *prima facie* case of discrimination, the plaintiff must show "(1) that [s]he engaged in activity protected under the Act, (2) that [s]he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012). As with retaliation

claims under Title VII, *see Quinn*, 653 F.3d at 754 n.9, an employment action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting" a claim under the FMLA. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted). A causal connection exists when the plaintiff shows that a discriminatory motive "played a part in the adverse employment action." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (internal quotation omitted).

Hasenwinkel bases her claim on three purportedly adverse acts: (1) her termination from Mosaic, (2) a one-month suspension for failure to report mold in a group home, and (3) generally unpleasant treatment by her supervisors. For the reasons set forth below, we agree with the district court that Hasenwinkel failed to make a submissible case of FMLA discrimination on any of these allegations.

1.

Hasenwinkel alleges that Mosaic discriminated against her by terminating her employment. "[T]ermination is unequivocally an adverse employment action." *Wages v. Stuart Mgmt. Corp.*, 798 F.3d 675, 678 (8th Cir. 2015). But termination is actionable under FMLA only if the employee was discharged because of her FMLA leave. *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). An employer may lawfully terminate an employee if, after the employee exhausts FMLA leave, she is "unable to perform an essential function of the position because of a physical or mental condition." 29 C.F.R. § 825.216(c). Hasenwinkel admits that she was physically unable to work when her FMLA benefits expired on January 8, 2012, and then again on April 2, 2012. Her termination was therefore lawful under the FMLA.

Hasenwinkel complains that the real reason that she did not return to work is that Mosaic created a hostile work environment. But regardless of whether that is

true, the fact remains that Hasenwinkel was physically incapable of performing her job. Hasenwinkel admitted during her ninety-day medical leave of absence in spring 2012 that she was physically unable to work and that she was not sure if she would ever be able to resume her nursing career. In her brief resisting summary judgment, Hasenwinkel conceded that she has not sought another job since leaving Mosaic and received an eighty-percent disability rating from the Social Security Administration. There is thus insufficient evidence to support a finding that Hasenwinkel was able to return to work even if Mosaic had maintained what she viewed as a welcoming environment.

2.

Hasenwinkel next cites her one-month suspension for failure to report mold in a group home as evidence of Mosaic's interference with her FMLA rights. Mosaic initially suspended Hasenwinkel without pay but later provided backpay for the month. A suspension with backpay can be an adverse employment action. We said in *McClure v. Career Systems Development Corp.*, 447 F.3d 1133 (8th Cir. 2006), that suspending an employee without pay was an adverse action in a Title VII retaliation case, even where the employee was later reinstated with backpay. *Id*. at 1137. The Supreme Court in *Burlington Northern* similarly observed that "an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." 548 U.S. at 72-73.

Even where a suspension with backpay could deter an employee from exercising rights under the FMLA, however, a plaintiff proceeding under the FMLA must show actual monetary loss to recover. The plaintiffs in *McClure* and *Burlington Northern* alleged discrimination under Title VII, which allows plaintiffs to recover non-pecuniary damages, *see* 42 U.S.C. § 1981a(b); *Burlington N.*, 548 U.S. at 72, whereas the FMLA limits damages to actual monetary loss. 29 U.S.C. § 2617(a)(1)(A); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739-40 (2003).

The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Hasenwinkel has not presented evidence of any tangible loss actually incurred and directly caused by her suspension. The closest Hasenwinkel comes to alleging monetary loss is noting in her appellate brief that "missing a paycheck . . . can often spell disaster for employees." Yet Hasenwinkel has acknowledged that she was made whole when Mosaic furnished backpay, and she presented no evidence that missing a paycheck caused her to suffer a "disaster" or any other tangible harm. Because Hasenwinkel has not identified any monetary loss incurred as a result of her suspension, her argument that she is entitled to relief under the FMLA fails as a matter of law.

3.

Finally, Hasenwinkel claims Mosaic discriminated against her by treating her unfairly and by ostracizing her from her coworkers. The alleged mistreatment by Mosaic supervisors included holding her to a higher standard than other nurses, subjecting her to a negative performance evaluation, scrutinizing her work more closely, and declining to invite her to lunch. None of these slights rises to the level of a materially adverse employment action. The FMLA does not impose "a general civility code for the American workplace," *Burlington N.*, 548 U.S. at 68 (internal quotation omitted), and this set of complaints by Hasenwinkel—without evidence of tangible injury or harm—involves the sort of "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*; *see AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014). They are not actions that will deter reasonable employees from exercising their FMLA rights and are therefore not actionable under the statute.

III.

Hasenwinkel also brings a state-law claim for wrongful discharge. Iowa law recognizes an exception to the rule of at-will employment for discharge in violation of public policy. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280-82 (Iowa 2000). To prevail, a plaintiff must show:

> (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee; and (4) the employer had no overriding business justification for the discharge.

*Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109-10 (Iowa 2011). This common-law claim protects employees who would otherwise be without a remedy. *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001).

Hasenwinkel's claim fails as a matter of Iowa law. The Iowa Supreme Court has not decided whether a federal statute, as opposed to Iowa law, can supply a public policy to support the tort of wrongful discharge. *Fitzgerald*, 613 N.W.2d at 285 n.4. But insofar as the FMLA establishes a public policy that might be protected by the Iowa common law, *see Smuck v. Nat'l Mgmt. Corp.*, 540 N.W.2d 669, 672-73 (Iowa Ct. App. 1995), the federal statute also provides employees with a remedy. Where, as here, the employee presents insufficient evidence to show that she was discharged in violation of the FMLA, her termination does not undermine a clearly defined public policy, and Iowa law does not provide a separate cause of action based on the tort of wrongful discharge. We therefore need not address whether the FMLA also preempts any state-law claim based on retaliation for exercising rights under the FMLA. The district court thus properly granted summary judgment for Mosaic on Hasenwinkel's state-law claim.

-10-

\* \* \*

The judgment of the district court is affirmed.

_____