# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2655

_____

| | | |
|---|---|---|
| Jane Doe, for herself, and by | * | |
| and through her Parent and natural | * | |
| guardian, Pauline Thomas; | * | |
| John Doe, for himself, and by | * | |
| and through Nickole Thomas, | * | |
| his Parent and natural guardian; | * | |
| Pauline Thomas, for herself; | * | |
| Nickole Thomas, for herself, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Dr. Al Tsai, M.D., in his individual | * | |
| capacity; Sherrie Murphy, R.N., in | * | |
| her individual capacity; Sgt. Chris | * | |
| Pickhardt, in his individual capacity; | * | |
| Laura Hauser, in her individual | * | |
| capacity; Marjorie Hogan, M.D., | * | |
| in her individual capacity; Hennepin | * | |
| County Medical Center; William | * | |
| Minor, R.N., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 10, 2011
Filed: August 3, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The Appellants appeal the district court's[1] adverse grant of summary judgment and denial of their partial motion for summary judgment on their claims under 42 U.S.C. § 1983 that the Appellees violated their constitutional rights. We affirm.

I.

We recite the facts in the light most favorable to the Appellants. At 5:30 in the morning, Pauline Thomas brought her daughter, Jane Doe, and four of her grandchildren, including John Doe and R.N.T., to the Emergency Room at the Hennepin County Medical Center (HCMC), a state-owned hospital. John Doe is the son of Pauline Thomas's daughter, Nickole Thomas. Pauline told the ER intake nurse, Sherri Murphy, that Jane Doe and the grandchildren had slept at her house and that the girls were supposed to have slept in her room away from the boys. When she had woken up earlier that morning, however, she had found all of the children sleeping together in one room, discovered a blood stain on Jane Doe's underwear, and heard R.N.T. flushing the toilet in the bathroom. Pauline also recounted an incident that had occurred the previous summer in which she had caught Jane Doe and R.N.T. jumping closely together on a trampoline with their pants partially down. All five children were registered as patients at HCMC.

Murphy was concerned that Jane Doe might have been sexually abused by R.N.T., and R.N.T. was placed in a separate room from the other children. Murphy shared her suspicions and Pauline's account with Dr. Albert Tsai, the attending ER physician. Dr. Tsai and Murphy spoke with Pauline and Jane Doe about the need to perform a sexual assault exam on Jane Doe. Pauline was reluctant to consent to the

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

exam because Jane Doe was sensitive about her body. At some point during the discussion, Laura Hauer, the on-call Sexual Assault Resource Service (SARS) nurse trained in performing forensic sexual assault exams, and Sergeant Holly Keegel and Officer Timothy Merkel of the Minneapolis Police were contacted. After Keegel and Merkel arrived at HCMC, they contacted Sergeants Arthur Knight and Christopher Pickhardt from the Family Violence Unit. Pauline eventually decided that the police and HCMC were more focused on gathering evidence with which to prosecute R.N.T. than on helping her family. As a result, she left HCMC with all of the children except R.N.T. The police stopped Pauline in the parking lot and asked her to come back so that the children could be examined. They told her that if she did not cooperate, they would place a 72-hour hold on the children and take the children into custody.

Pauline returned to the hospital and contacted her attorney. Pauline eventually agreed to a visual examination of Jane Doe but refused to allow the sedated sexual assault examination that Dr. Tsai and Murphy recommended. Dr. Tsai could not determine the source of the bleeding from the visual exam. Dr. Tsai, Murphy, and Sergeant Pickhardt attempted to get Pauline's consent for a sedated internal exam of Jane Doe. Pauline refused. Dr. Tsai and Sergeant Pickhardt agreed that a 72-hour hold on Jane Doe was necessary so that Dr. Tsai could perform the exam. Sergeant Pickhardt placed both Jane Doe and John Doe under a 72-hour hold. Pauline was then asked to leave HCMC.

In compliance with HCMC policy, Dr. Tsai signed HCMC's "Medical/Legal Examination Waiver" and the "informed-consent" forms before performing the internal examination on Jane Doe. He indicated that he was signing because the mother's signature was unavailable and that Jane Doe was under a 72-hour hold. Dr. Tsai contacted Dr. Marjorie Hogan, who was the on-call member of the Child Maltreatment Physician Consult Team and was trained in child-maltreatment evaluations. At 1:55 that afternoon, Dr. Tsai performed the internal medical and forensic exam on Jane Doe while Murphy, Hauer, and Hogan observed.

Nurse William Minor was assigned to care for John Doe. Dr. Tsai gave John Doe a general examination and inspected John Doe's genitalia for signs of sexual abuse. The exam was both visual and internal.

Jane Doe, John Doe, Pauline Thomas, and Nickole Thomas brought a section 1983 action against Sergeant Pickhardt; Drs. Tsai and Hogan, nurses Murphy, Hauser, and Minor; and HCMC, asserting multiple federal constitutional and state claims. The Appellants moved for partial summary judgment on their claims that the 72-hour hold placed on John Doe, the internal examination of Jane Doe, and the examination of John Doe violated the children's rights under the Fourth Amendment and that the seizure and search of both children violated the Fourteenth Amendment rights of all the Appellants. The Appellees cross-moved for summary judgment. The district court denied the Appellants' motion for partial summary judgment, granted the Appellees' motion for summary judgment, and dismissed the complaint.[2] The Appellees appeal both the adverse grant of summary judgment and the denial of their partial motion for summary judgment.[3]

---

[2] In the same order, the district court denied the Appellants' motion to strike certain evidence offered by the Appellees in support of their motions for summary judgment, and the Appellants, in passing, attempt to appeal the district court's evidentiary order. We do not have jurisdiction over the appeal, however, because they failed to include it in their notice of appeal or other collateral documents, including their Form A. See ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 189 (8th Cir. 1995) (citing Fed. R. App. P. 3(c)).

[3] The Appellants do not contest the district court's grant of summary judgment on their state law claims.

II.

The Appellants argue that the district court erred in granting summary judgment against them because (1) the Appellees did not move for summary judgment on all of their claims, (2) the district court ignored questions of material fact, and (3) the district court at times employed the wrong legal standards.[4]

We review a district court's grant of summary judgment de novo. <u>Anderson v. Durham D & M, L.L.C.</u>, 606 F.3d 513, 518 (8th Cir. 2010). We will affirm the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We reject the Appellants' contention that the Appellees failed to move for summary judgment on all of the Appellants' claims. The Appellees framed their motions for summary judgment as including all of the claims asserted against them. Although we agree with the Appellants that Sergeant Pickhardt did not argue that summary judgment was appropriate on the children's Fourth Amendment search claims, this absence is logical because it is unclear from the Appellants' complaint whether they assert a Fourth Amendment search claim against Sergeant Pickhardt and the Appellants do not contest the district court's characterization of their complaint as alleging only a Fourth Amendment seizure claim against him.

We also reject the Appellants' contention that the district court ignored questions of material fact. Although the Appellants purport to identify facts that the district court ignored, for the majority of these facts the Appellants give no record citation. <u>See</u> Fed. R. App. P. 28(a)(9)(A) (requiring the appellant to provide "citations to the . . . parts of the record on which the appellant relies"). In addition, the district

---

[4] The Appellants' arguments in their brief and at oral argument against the adverse grant of summary judgment present a moving target. We generously address every argument they have suggested at these various points.

court recounted at length the various factual disputes between the parties and specifically mentioned most of the facts the Appellants now claim the court ignored. Finally, the Appellants fail to explain how the allegedly omitted facts establish a material question of fact. See Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) (finding challenge to factual findings underdeveloped where the appellant merely identified allegedly omitted facts without argument); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (requiring the party opposing summary judgment to set forth facts that demonstrate a genuine issue for trial, not simply to identify facts that are contested).

We also reject the Appellants' contention that the district court at times used the wrong legal standards when analyzing the facts. In support of this argument, the Appellants have made only perfunctory, conclusory statements without legal citation. We find the Appellants briefing on this issue wholly inadequate. See Fed. R. App. P. 28(a)(9)(A) (mandating that appellant's brief include contentions, reasons for them, and citations to authorities).

Because we affirm the district court's adverse grant of summary judgment against the Appellants, we do not reach the denial of the Appellants' partial motion for summary judgment.[5]

---

[5] We could interpret the Appellants' arguments with respect to the denial of their motion for partial summary judgment as additional grounds for contesting the adverse grant of summary judgment, and we recognize that we have sometimes charitably construed an appellant's argument on appeal. See, e.g., United States v. Destefano, 178 F. App'x 613, 615 n.4 (8th Cir. 2006) (unpublished per curiam). However, in light of the Appellants' express disavowal of raising such additional grounds in both their brief and at oral argument, we decline to sua sponte reframe the Appellants' arguments for them.

## III.

Accordingly, the judgment of the district court is affirmed.

_____