**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2751
_____

UGORJI O. UGORJI,

Appellant

v.

NEW JERSEY ENVIRONMENTAL INFRASTRUCTURE TRUST;
ROBERT BRIANT, Chairman of the Board, New Jersey
Environmental Infrastructure Trust; DENNIS HART, Executive
Director, New Jersey Environmental Infrastructure Trust;
FRANK SCANGARELLA, Chief Operating Officer, New Jersey
Environmental Infrastructure Trust
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-08-cv-05424)
District Judge: The Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 23, 2013
_____

Before: RENDELL and GREENAWAY, JR., <u>Circuit Judges,</u>
and ROSENTHAL[*], <u>District Judge</u>

---

[*]  The Honorable Lee H. Rosenthal, United States District Judge for the Southern District
of Texas, sitting by designation.

(Opinion Filed: June 18, 2013)

_____

O P I N I O N

_____

**ROSENTHAL**, <u>District Judge</u>.

Dr. Ugorji O. Ugorji, who is African-American and from Nigeria, sued his employer, the New Jersey Environmental Infrastructure Trust ("NJEIT"), alleging race and national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17. Ugorji also sued the chair of the NJEIT board of trustees,[1] the executive director, and the chief operating officer under 42 U.S.C. § 1983. Ugorji appeals the District Court's grant of summary judgment for the defendants and the entry of final judgment dismissing his claims. We will affirm for substantially the same reasons stated by the District Court in its well-reasoned decision.

## I.

### *Background*

Ugorji began working for the New Jersey Department of Environmental Protection ("DEP") in 1986 and for the NJEIT in 1996. At the NJEIT, he was classified as an Administrative Assistant 2, a clerical position. Ugorji frequently told his supervisors that he was interested in promotion to a managerial position and in assuming additional

_____

[1] This defendant died while the appeal was pending.

responsibilities. Ugorji pointed to his doctoral degree (in educational administration) and work experience in support of his requests.

In January 2007, the NJEIT hired Frank Scangarella as its Chief Operating Officer. Ugorji reported to Scangarella. Soon after Scangarella began working, Ugorji asked him for a promotion or reclassification to a managerial position. Scangarella responded that because he had recently become COO and had supervised Ugorji for only a short time, he did not have enough information to decide whether to grant Ugorji's request. Scangarella told Ugorji that he would support reclassification if Ugorji's job duties did not match his current classification. Scangarella suggested that Ugorji either request an external "desk audit"—a study to determine whether his job classification accurately reflected his duties—or provide Scangarella with other information showing he was improperly classified.

In June 2007, before taking either step Scangarella suggested, Ugorji filed an internal complaint alleging discrimination in the failure to grant him a promotion or give him additional assignments that he believed himself qualified to perform. Scangarella, who also served as the NJEIT's Affirmative Action Officer, investigated Ugorji's complaint and found it without basis. The NJEIT board chair, Robert Briant, relied on that investigation and concluded that the NJEIT had not discriminated against Ugorji.

In September 2007, Ugorji requested a desk audit by the New Jersey Department of Personnel ("DOP"). The desk audit included interviews with Ugorji and Scangarella

and a review of Ugorji's job duties. In January 2008, the DOP issued a preliminary finding that Ugorji should be reclassified as an Administrative Analyst 1, a managerial position.

Scangarella wrote a letter to the DOP dated February 13, 2008, disagreeing with its decision to reclassify Ugorji. The letter stated that Ugorji "currently does not perform [the] functions [of an Administrative Analyst 1]" and that he "is subject to close supervision and frequent direction by the COO."

In a March 20, 2008 letter, the DOP issued its final decision reclassifying Ugorji as an Administrative Analyst 1. The DOP gave the NJEIT the option of maintaining Ugorji's Administrative Assistant 2 classification by taking away the job duties that had led to the reclassification. In response, the NJEIT revised Ugorji's employment agreement to specify duties appropriate for an Administrative Assistant 2 but not an Administrative Analyst 1. Based on these changes, the DOP reclassified Ugorji back to an Administrative Assistant 2. Ugorji alleged that the NJEIT discriminated against him when it failed to promote him and opposed his reclassification to a managerial position.

Ugorji also contended that he was subjected to other discriminatory acts between 2006 and 2010. In December 2006, Dennis Hart reassigned Ugorji to an office that was noisy, moldy, and without windows. That lasted until January 2009, when Ugorji was provided a different office, with windows, after he presented a doctor's note about the effects of the interior office on his health. Ugorji alleged that after the DOP's first desk

4

audit, Scangarella belittled his skills, contributions, and work product, and that after Ugorji refused to sign the revised list of his job duties, Scangarella yelled at him. Ugorji contended that Scangeralla discriminated against him on several other occasions, including by following him outside the work area in a harassing manner; ordering Ugorji to remove a bag he had brought to work because Scangarella believed it contained a personal laptop; requiring Ugorji to reorganize his office furniture so that his computer monitor faced the door; checking documents Ugorji was scanning or holding to see if they were in fact work-related; and confiscating a space heater from Ugorji's office.

In November 2008, Ugorji filed this suit. While it was pending, he requested a second desk audit and reclassification to a managerial position. The NJEIT again opposed Ugorji's reclassification request. The successor agency to the DOP, the New Jersey Civil Service Commission ("CSC"), did the desk audit and found that Ugorji was properly classified as an Administrative Assistant 2. The NJEIT offered Ugorji additional work responsibilities, including working on the NJEIT's newspaper and a reclassification to the position of Senior Standards and Procedures Technician, but Ugorji declined those offers.

In his third amended complaint, Ugorji alleged that the NJEIT and the individual defendants, Briant, Hart, and Scangarella, were liable for race and national origin discrimination under Title VII and § 1983. After discovery, the defendants moved for summary judgment. The District Court granted that motion.

## II.

## The Legal Standard

We have jurisdiction under 28 U.S.C. § 1291. The District Court's decision granting summary judgment is reviewed de novo. *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is appropriate when the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm the District Court on any ground supported by the record. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000).

## III.

## Discussion

## A.

The District Court granted summary judgment on Ugorji's Title VII claims against the NJEIT on the ground that it had fewer than 15 employees during the relevant period. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year . . . ." 42 U.S.C. § 2000e(b). An "industry affecting commerce" includes "any governmental industry, business, or activity." *Id.*, § 2000e(h). A "person" includes "one or more . . . governments,

6

governmental agencies, [or] political subdivisions . . . ." *Id*., § 2000e(a).

Ugorji argues that the 15-employee statutory requirement does not apply to public employers and, alternatively, that the NJEIT and DEP should be considered a single entity. As to the first argument, Title VII's 15-employee requirement does not distinguish between public and private employers. Ugorji argues that a Tenth Circuit opinion, *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980), suggests that public employers are exempt from the 15-employee requirement. In *Owens,* the court held that when an employee sues an employee or agent of a political subdivision, such as a county, the court should count all of the subdivision's employees in determining whether the 15-employee threshold is satisfied. *Id*. at 287. The *Owens* court did not hold that the 15-employee requirement was inapplicable. *Owens* does not support the argument that employees outside the state agency (or, in that case, political subdivision) sued are to be counted in deciding whether it is a Title VII "employer." *Cf. Laurie v. Ala. Ct. Crim. Appeals*, 256 F.3d 1266, 1268 (11th Cir. 2001) (holding that a state court's employees cannot be aggregated with employees of other courts or state agencies to meet the Title VII 15-employee requirement).

Ugorji's second argument, that the District Court should have considered the NJEIT and DEP as a single employer in deciding whether the 15-employee threshold was met, also lacks support. This Court has previously held that two corporate entities should be considered a single employer when: (1) one entity split itself into separate entities with

7

fewer than 15 employees to evade Title VII liability; (2) one entity directed another entity's discriminatory acts; or (3) the entities are so interconnected that they collectively caused the alleged discriminatory employment practice. *Nesbit v. Gears Unlim., Inc.*, 347 F.3d 72, 85–87 (3d Cir. 2003). Ugorji did not point to record evidence of the first two elements. Instead, he contends that the DEP and NJEIT are interrelated in ways that make them a single entity.

"[S]ubstantive consolidation is an equitable remedy and is difficult to achieve." *Nesbit*, 347 F.3d at 86. In deciding whether entities should be substantively consolidated, we apply an "open-ended, equitable inquiry," looking to the following nonexclusive factors: (1) "the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters)"; (2) "whether they present themselves as a single company such that third parties dealt with them as one unit"; (3) "whether a parent company covers the salaries, expenses, or losses of its subsidiary"; and (4) "whether one entity does business exclusively with the other." *Id*. at 87.

Ugorji points out that the DEP provides personnel, payroll, and training services and handles labor relations for the NJEIT, and that the DEP's commissioner is an *ex officio* member of the NJEIT's board of directors, under N.J. Stat. Ann. § 58:11B–4(b). Ugorji also notes that it was the DEP that managed his desk audit requests. We agree with the District Court that Ugorji did not point to record evidence giving rise to a

genuine factual dispute material to determining whether the NJEIT and DEP should be viewed as a single entity for Title VII purposes. The statute creating the NJEIT states: "[t]here is established *in, but not of*, the Department of Environmental Protection a body corporate and politic, with corporate succession, to be known as the [NJEIT]." N.J. Stat. Ann. § 58:11B–4(a) (emphasis added). The NJEIT and DEP are separate entities under state law. While the DEP may provide some services to the NJEIT, that is not ordinarily sufficient for substantive consolidation. Ugorji has not pointed to other evidence supporting an inference that the two agencies "are so interconnected that they collectively caused the alleged discriminatory employment practice." *Nesbit*, 347 F.3d at 86. Summary judgment was properly granted for the NJEIT on Ugorji's Title VII claim.[2] Considering that claim on the merits does not alter the result.

**B.**

Claims for an equal protection violation based on race and national origin under § 1983, like a disparate treatment claim under Title VII, require a plaintiff to prove intentional discrimination. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (Title VII); *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524,

---

[2] The individual defendants cannot be held liable under Title VII. *See Le v. Univ. of Pa.*, 321 F.3d 403, 408 n.3 (3d Cir. 2003) ("'Congress did not intend to hold individual employees liable under Title VII.'" (quoting *Sheridan v. EI DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc))).

543–44 (3d Cir. 2011) (equal protection).[3] Because Ugorji has not provided direct evidence of discrimination, his claims are governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 270 (3d Cir. 2010) (applying *McDonnell Douglas* to an equal protection claim brought under § 1981). Under the *McDonnell Douglas* framework, Ugorji had the initial burden of making a *prima facie* showing of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifted to the defendants to "articulate some legitimate, nondiscriminatory reason" for their actions. *Id*. The burden then returned to Ugorji to raise a factual dispute as to whether the legitimate reasons the defendants proffered were a pretext or whether discrimination was among the motives for the challenged employment action. *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 426–27 (3d Cir. 2013).

Ugorji claims that the defendants discriminated against him on the basis of his race and national origin by failing to promote him or support his request for reclassification to a managerial position.[4] The defendants proffered several

_____

[3] Ugorji does not allege or argue that "the discrimination he suffered was pursuant to an official policy or custom" of the NJEIT. *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). His § 1983 claims appear to be made solely against the individual defendants.

[4] A *prima facie* case of discrimination requires a showing of an adverse employment action. *Burton*, 707 F.3d at 426. An adverse employment action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

nondiscriminatory reasons for their actions. The defendants stated that they opposed reclassifying Ugorji's job title because they believed that the Administrative Assistant 2 title accurately reflected his duties. The defendants also stated that they did not need anyone, including Ugorji, performing the duties of an Administrative Analyst 1.

To raise a factual dispute as to discrimination, Ugorji "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton*, 707 F.3d at 427 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). One approach is to point to evidence "that the employer treated other, similarly situated persons not of his protected class more favorably." *Fuentes*, 32 F.3d at 765. Evidence of disparate treatment must show that a comparator was similarly situated to the plaintiff "in 'all relevant respects.'" *Keystone Redev. Partners LLC v. Decker*, 631 F.3d 89, 109 (3d Cir. 2011) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assurance Co.*,

Ugorji's allegations that the defendants assigned him to a noisy, moldy office without windows; belittled his skills, contributions, and work product; followed and yelled at him; ordered him to remove a bag he brought to work; required him to reorganize his office furniture; checked documents he was holding; and confiscated a space heater from his office are not adverse employment actions that give rise to a damages claim under Title VII or § 1983.

11

359 F.3d 296, 305 (3d Cir. 2004). The District Court found that the individuals Ugorji identified as comparators held very different jobs than his, and that the record did not include their personnel files, resumes, or other admissible sources of information about their responsibilities, experience, and qualifications. On appeal, Ugorji argues that the District Court erred in finding that the evidence as to these employees did not defeat summary judgment.

Ugorji first points to evidence that the NJEIT supported reclassification efforts by Mary Claire D'Andrea, a white employee. Unlike Ugorji, D'Andrea was a management-level employee and former acting NJEIT Executive Director. Ugorji has failed to point to evidence showing that he and D'Andrea were similarly situated in any relevant respect aside from requesting a desk audit. The promotion or reclassification of one employee but not another, when those employees have different job responsibilities, qualifications, and experience and their promotion or reclassification would fill different needs within the organization, does not create or support an inference of discrimination.

Ugorji also pointed to Josephine Manzo, a white NJEIT employee who was promoted to the position of Senior Standards and Procedures Technician. But in 2011, the NJEIT offered to support Ugorji's reclassification to this same position, which would have increased his salary and reduced his work hours. Ugorji turned this offer down because the NJEIT refused to recommend a reclassification to Administrative Analyst 1 or Community Relations Manager, positions that would have paid him an even higher

salary and given him management responsibilities. The NJEIT's promotion of another employee to a job that Ugorji was also offered does not support an inference that the NJEIT treated Manzo more favorably than Ugorji.

Ugorji finally argues that the District Court failed to consider his argument that another NJEIT employee, Trudy Edinger, was assigned responsibilities of an Alternative Affirmative Action Officer and was promoted to Executive Assistant 3, a clerical position. Ugorji asserts that he was qualified for promotion to the Affirmative Action Officer position, but he does not point to evidence of Edinger's qualifications or experience. There is no basis for an inference that Ugorji and Edinger were similarly situated or that her promotion evidences discrimination against Ugorji.

## C.

Ugorji argues that he had alleged a hostile work environment claim under Title VII and that the defendants failed to move for summary judgment on that claim. Although his third amended complaint mentions "abusive conduct in the workplace," Ugorji asserts only a single general count of discrimination under Title VII. The defendants moved for summary judgment on all of Ugorji's Title VII claims. At no point did Ugorji assert before the District Court that he had additional claims that were not covered by the motion. Ugorji did not clearly allege a hostile work environment claim, *see Doe ex rel. Thomas v. Tsai*, 648 F.3d 584, 587 (8th Cir. 2011), and the defendants moved for summary judgment on all the claims Ugorji asserted.

13

## IV.

## Conclusion

We will affirm the District Court's judgment.