# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1134

_____

David L. Johnson, Jr.

*Plaintiff - Appellant*

v.

Douglas County Medical Department; Douglas County Correctional Medical Department

*Defendant*s

County of Douglas, Nebraska, a political subdivision of the State of Nebraska

*Defendant - Appellee*

John Doe, Nos. I-IV; John Doe, I; John Doe, II; John Doe, III; John Doe, IV; Cesar Inda, both individually and officially as a corrections officer of the Douglas County Correctional Center; Don Coniglio, both individually and officially as a corrections officer of the Douglas County Correctional Center; Susan M. Wilkinson, both individually and officially as an agent of the County of Douglas, Nebraska; Lieutenant Banks, both individually and officially as a corrections officer of the Douglas County Correctoinal Center; Correct Care Solutions, a Kansas limited liability company

*Defendant*s

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 12, 2013
Filed: August 2, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

David Johnson seeks to impose municipal liability through 42 U.S.C. § 1983 on the County of Douglas, Nebraska ("the County") after a jail operated by the County failed to provide him with necessary medication while he was incarcerated. The district court[1] ruled that Johnson failed to present evidence of a custom of unconstitutional deprivations at the jail and granted summary judgment to the County. For the reasons discussed below, we affirm.

## I.    Background

We recite the facts in the light most favorable to Johnson. *See, e.g.*, *Doe ex rel. Thomas v. Tsai*, 648 F.3d 584, 585 (8th Cir. 2011). Johnson was arrested in the morning hours of January 27, 2009 and held in the County jail pending an appearance in federal district court on January 28. The arresting officers received a vial of medicine for Johnson, labeled with the name "Dilantin" and dosage instructions, from Johnson's mother and delivered it to the jail. As part of the jail intake procedure, agents of the County verified that Johnson required the medication twice per day, as stated on the instructions, for a seizure disorder. Johnson had been taking the medicine on schedule prior to his arrest, and his last dose prior to his arrest was on the morning of January 27.

_____

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

Over the course of several hours on the morning of January 28, Johnson repeatedly requested the anti-seizure medicine from at least three different groups of County guards, all of whom refused to provide the medicine. First, Johnson was awakened before sunrise and placed in a unit with two other inmates who were to be transported to the federal courthouse that day. Johnson made three requests for the medication to a night-shift guard in that unit. The guard refused to take action and threatened to place Johnson in lockdown upon his return from the courthouse if he continued to ask for the medicine. Second, another County guard escorted Johnson to a holding cell in the administrative area to await transport to the courthouse. Johnson requested his medicine from the escorting guard, who responded that "pill call" was at 9:00 a.m. and that Johnson would receive his medicine when he returned from the courthouse. Third, Johnson requested his medicine several times from County guards in the administrative holding cell area. Although several guards were present because the shift was changing from night to day, none responded to Johnson's requests for his medicine.

At approximately 8:30 a.m., United States Marshals collected Johnson and delivered him to the federal courthouse. In a holding cell at the courthouse, Johnson suffered a *grand mal* seizure. He was transported to Creighton University Medical Center in Omaha, Nebraska, where the staff determined that the seizure occurred because the level of Dilantin in Johnson's blood was too low.

Johnson filed this suit against three individual corrections officers, the County, and the medical services provider for the County jail and its director, alleging violations of his civil rights based on the denial of medication. He later dismissed the medical services provider and its director. In May 2012, the district court granted summary judgment to the three individual corrections officers, ruling that uncontroverted evidence demonstrated that none of the three had any contact with,

or had any responsibility for, Johnson on the morning of January 28, 2009.[2] Finally, in December 2012, the district court granted summary judgment to the sole remaining defendant, the County, on the basis that Johnson failed to present evidence of "a continuing, widespread, persistent patten" of unconstitutional conduct at the County jail. Johnson appeals the grant of summary judgment to the County, arguing that the separate denials of his requests for medication by at least three different guards on the morning of January 28 establish such a pattern.

## II. Discussion

We review a grant of summary judgment *de novo*, affirming if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Tsai*, 648 F.3d at 587 (quoting Fed. R. Civ. P. 56(a)). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010)).

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

---

[2]Johnson does not appeal the grant of summary judgment to the individual corrections officers. Because that decision was based on a failure to identify accurately the individuals who allegedly denied Johnson's requests for medication, rather than a determination that the alleged conduct of those individuals did not amount to a constitutional deprivation, that decision does not foreclose Johnson's claim against the County. *Cf. McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

Johnson seeks to impose municipal liability on the County through § 1983 for the allegedly unconstitutional actions of its agents in depriving him of his anti-seizure medication. "[I]t is well established 'that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor.'" *Atkinson*, 709 F.3d at 1214 (quoting *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007)). However,

> [l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

The County's official written policy is to provide comprehensive healthcare services to the inmates. Johnson concedes the "lack of an official, written policy promulgated by the County which would have been the cause of the constitutional deprivation alleged by Mr. Johnson." He contends instead that there is at least a genuine issue of fact as to whether the County has a custom of ignoring that written policy in allowing its jail personnel to deny medication to inmates. To establish a claim for "custom" liability, Johnson must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991) (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)).

With respect to the first element, "a single deviation from a written, official policy does not prove a conflicting custom." *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). Johnson presents no evidence that other inmates have been denied medication at the County jail, but he contends that the multiple denials of his medication by different guards constitute multiple deviations. He relies on *McGautha v. Jackson County, Missouri, Collections Department*, 36 F.3d 53 (8th Cir. 1994), in which actions by different government employees towards a single plaintiff over the course of about three years entitled the plaintiff to a jury instruction regarding "custom" liability. *See id.* at 55.

Like the district court, we do not find *McGautha* controlling here. To be sure, multiple incidents involving a single plaintiff could establish a "custom" if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials. In the instant case, however, Johnson presents no evidence to suggest that the County's policymaking officials would have received notice of the denial of his medication in the early morning hours of January 28 and made a deliberate choice to ignore or tacitly authorize the denial, all in the course of those few hours. Because Johnson fails to present evidence of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," *Thelma D.*, 934 F.2d at 932-33 (quoting *Jane Doe A*, 901 F.2d at 646), the grant of summary judgment to the County must be affirmed.

## III.    Conclusion

For the foregoing reasons, we affirm the grant of summary judgment to the County.

_____