# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1072

_____

Frank L. Snider, III

*Plaintiff - Appellee*

v.

City of Cape Girardeau

*Defendant*

Matthew Peters, In his individual capacity and his official capacity as a police
officer of the City of Cape Girardeau

*Defendant - Appellant*

H. Morley Swingle

*Defendant*

_____

No. 13-1108

_____

Frank L. Snider, III

*Plaintiff - Appellee*

v.

City of Cape Girardeau; Matthew Peters, In his individual capacity and his official capacity as a police officer of the City of Cape Girardeau; H. Morley Swingle

*Defendant*s

State of Missouri

*Intervenor Defendant - Appellant*

_____

No. 13-1410

_____

Frank L. Snider, III

*Plaintiff - Appellant*

v.

City of Cape Girardeau

*Defendant - Appellee*

Matthew Peters, In his individual capacity and his official capacity as a police officer of the City of Cape Girardeau; H. Morley Swingle

*Defendant*s

_____

No. 13-1618

_____

Frank L. Snider, III

*Plaintiff - Appellee*

v.

City of Cape Girardeau

*Defendant*

Matthew Peters, In his individual capacity and his official capacity as a police officer of the City of Cape Girardeau

*Defendant - Appellant*

H. Morley Swingle

*Defendant*

_____

No. 13-1619

_____

Frank L. Snider, III

*Plaintiff - Appellee*

v.

City of Cape Girardeau; Matthew Peters, In his individual capacity and his official capacity as a police officer of the City of Cape Girardeau; H. Morley Swingle

*Defendant*s

State of Missouri

*Intervenor below - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

-3-

Submitted: January 16, 2014
Filed: May 30, 2014
_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.
_____

BYE, Circuit Judge.

Officer Matthew Peters of the Cape Girardeau Police Department appeals the district court's[1] denial of his motion for summary judgment on the basis of qualified immunity and award of attorneys' fees. The State of Missouri, which intervened in this action, appeals the district court's order declaring its flag desecration statute facially unconstitutional and the award of attorneys' fees. Frank Snider appeals the district court's order denying his motion for summary judgment against the City of Cape Girardeau, Missouri. We affirm.

I

On October 20, 2009, while standing in his front yard, Snider attempted to set fire to an American flag. When he was unable to ignite the flag, he shredded it with a knife and threw it into the street. A neighbor who had observed the incident reported it to the police.

Officer Peters responded to investigate. Upon arriving at the scene, he saw the flag in the road and Snider standing in his yard. Officer Peters asked Snider why he had destroyed the flag. Snider replied "he hated the United States because it was the

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

country's fault that he could not find a job." Officer Peters issued Snider a citation for violating the city's littering ordinance, which was eventually voided.

Upon Officer Peters' returning to the station, another officer informed him of a Missouri statute prohibiting flag desecration. After reviewing the statute, Mo. Rev. Stat. § 578.095, Officer Peters drafted a probable cause statement indicating he believed Snider had committed the criminal offense of desecration of the American flag.[2] He submitted the probable cause statement to Cape Girardeau County prosecuting attorney H. Morley Swingle. After reviewing the probable cause statement, Swingle submitted a warrant application to the Honorable Gary A. Kamp, Circuit Judge of Cape Girardeau County, who issued the warrant for Snider's arrest. On October 23, 2009, Officer Peters executed the warrant and arrested Snider for violating § 578.095. Snider was held in jail for approximately eight hours.

Both Officer Peters and prosecuting attorney Swingle stated they were unaware of the United States Supreme Court's decisions in Texas v. Johnson, 491 U.S. 397 (1989), and United States v. Eichman, 496 U.S. 310 (1990), which struck down statutes criminalizing flag desecration as unconstitutional. After Snider's arrest, a local news reporter called Swingle and asked him if he was aware of Texas v. Johnson. Upon reading the case, Swingle dismissed the charge against Snider, and Snider was released from jail.

On July 6, 2010, Snider filed this 42 U.S.C. § 1983 action against Cape Girardeau and Officer Peters. Snider later amended his complaint to add Swingle as a defendant. On April 21, 2011, Missouri intervened in the action. Snider sought nominal and punitive damages, injunctive relief, and a determination that the state flag

---

[2]At the time of Snider's arrest, Cape Girardeau had an ordinance prohibiting flag desecration, Ordinance § 17-5, the text of which was identical to Mo. Rev. Stat. § 578.095. However, Snider was never charged with a violation Ordinance § 17-5, and it has since been repealed by the Cape Girardeau city council.

desecration statute, § 578.095, and Cape Girardeau's substantively identical ordinance, § 17-5, violated the First Amendment. Snider claimed his arrest violated his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments, and Cape Girardeau developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of Cape Girardeau citizens, including failing to adequately train its police officers.

All parties filed motions for summary judgment. The district court granted Snider's motion for summary judgment against Missouri, granting a permanent injunction against the enforcement of § 578.095. The district court denied Missouri's motion for summary judgment. The district court denied Snider's motion for summary judgment against Cape Girardeau and Swingle, and granted summary judgment in favor of Cape Girardeau and declared the claim against Swingle moot.

The district court also denied Officer Peters' motion for summary judgment on the basis of qualified immunity, concluding Officer Peters had violated Snider's constitutional rights under the First and Fourth Amendments. A trial was held to determine Snider's damages, after which the district court entered a judgment in favor of Snider and against Officer Peters in the amount of $7,000 in actual damages on December 14, 2012. The court denied punitive damages and entered judgment in favor of the City of Cape Girardeau and against Snider.

Finally, the district court awarded Snider's attorneys $61,890 in attorneys' fees plus $266.68 in costs. The award was against Officer Peters and Missouri, jointly and severally. The district court declined to apportion the attorneys' fees or lower the attorneys' hourly rates.

Officer Peters now appeals the denial of qualified immunity and the attorneys' fees award. Missouri appeals the determination that § 578.095 was facially

unconstitutional and the attorneys' fees award. Snider appeals the denial of his motion for summary judgment against Cape Girardeau.

## II

We first consider whether the district court erred in denying Officer Peters' motion for summary judgment on the basis of qualified immunity. For an appeal of a district court's denial of qualified immunity, we "accept the district court's findings of fact taken in the light most favorable to [Snider]." Stoner v. Watlingten, 735 F.3d 799, 801 n.2 (8th Cir. 2013).

Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013). To overcome a defendant's claim of qualified immunity, the burden falls on the plaintiff to show: "(1) the facts, viewed in the light most favorable to the plaintiff[], demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010).

Officer Peters concedes he deprived Snider of his First and Fourth Amendment rights. Thus, the question remains whether those rights were clearly established at the time of Snider's arrest. This inquiry "turns on the objective legal reasonableness of [Officer Peters'] action, assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotations and citations omitted). A constitutional or statutory right is clearly established if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. To

overcome qualified immunity, Snider must prove "in the light of pre-existing law the unlawfulness [of Officer Peters' conduct was] apparent." Id.

The United States Supreme Court has a long history of protecting expressive conduct involving the American flag on First Amendment grounds. In Spence v. Washington, 418 U.S. 405 (1974), the Supreme Court overturned Spence's conviction for improper use of a flag for displaying it with a peace sign taped to it as a means of expressing his opinion that America stood for peace.

In Texas v. Johnson, 491 U.S. 397 (1989), the Court invalidated a Texas flag desecration statute as unconstitutionally applied to Johnson, who had burned an American flag while participating in a protest outside of a national political convention. In doing so, the Court highlighted its previous decisions recognizing the "communicative nature of conduct relating to flags." Id. at 404. "Pregnant with expressive content, the flag as readily signifies this Nation as does the combination of letters found in 'America.'" Id. at 405.

One year later, the Supreme Court followed up the Texas v. Johnson decision with United States v. Eichman, 496 U.S. 310 (1990), which invalidated the federal Flag Protection Act as applied to defendants who were prosecuted for setting fire to American flags on the steps of the United States Capitol. Id. at 312. The Court reasoned "[p]unishing desecration of the flag dilutes the very freedom that makes this emblem so revered, and worth revering." Id. at 319.

We agree with the district court. Beginning in 1974, with Spence, and culminating in 1989 and 1990, with Texas v. Johnson and Eichman, the Supreme Court clearly established the First Amendment prohibits the prosecution of an individual for using the American flag to express an opinion. This right had been clearly established for twenty years when Officer Peters arrested Snider on October

24, 2009, and, thus, a reasonably competent officer would have known Snider's expressive conduct was constitutionally protected.

In response, Officer Peters argues his conduct should be insulated because he acted pursuant to an arrest warrant issued by a local magistrate judge, and he cites the Supreme Court's recent decision in Messerschmidt v. Millender, 132 S.Ct. 1235 (2012). In Messerschmidt, the Court granted qualified immunity to officers who had executed a search warrant unsupported by probable cause, holding that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" Id. at 1245. However, the Court noted "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." Id.

The Messerschmidt court also affirmed the survival of the standard set forth in Malley v. Briggs, 475 U.S. 335 (1986), which held there would be no grant of qualified immunity if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Id. at 341. We have also noted the survival of the Malley standard post-Messerschmidt. See Saterdalen, 725 F.3d at 841; Small v. McCrystal, 708 F.3d 997, 1006 (8th Cir. 2013). This outcome is a sensible one as both the Supreme Court and this Court have observed the fact that a warrant has issued should not be dispositive because "it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." Malley, 475 U.S. at 345-46.

Officer Peters' actions are not insulated by the arrest warrant. This country has a long history of protecting expressive conduct on First Amendment grounds, especially when the American flag is the mode of expression. A reasonably competent officer in Officer Peters' position would have concluded no arrest warrant should issue for the expressive conduct engaged in by Snider. Although it is

unfortunate and fairly inexplicable that the error was not corrected by the county prosecutor or the magistrate judge, no warrant should have been sought in the first place. Thus, the district court correctly concluded Officer Peters was not entitled to qualified immunity.

## III

We next consider whether the district court erred in holding Missouri's flag desecration statute to be facially unconstitutional.[3] The First Amendment prevents the government from proscribing speech and expressive conduct because of the disapproval of the ideas expressed. R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382 (1992). Content-based regulations, such as Mo. Rev. Stat. § 578.095, are "presumptively invalid." Id. The government has the burden of rebutting the presumption. United States v. Stevens, 559 U.S. 460, 468 (2010). Conduct directed toward the United States flag has been recognized as "sufficiently imbued with elements of communication" to implicate the First Amendment. Spence 418 U.S. at 409-11.

Imprecise laws can be attacked on their face as either overbroad or vague. The overbreadth doctrine permits the facial invalidation of laws which inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). Even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague if it fails to establish standards for the police and public that are sufficient to

---

[3]The parties agree Missouri's flag desecration statute, Mo. Rev. Stat. § 578.095, is unconstitutional as applied to Snider. Thus, the question on appeal is whether the statute is also facially unconstitutional.

guard against the arbitrary deprivation of liberty interests. City of Chicago v. Morales, 527 U.S. 41, 53 (1999).

Only substantial overbreadth supports facial invalidation, as there are significant social costs in blocking a law's application to constitutionally protected conduct. Virginia v. Hicks, 539 U.S. 113, 118-19 (2003). Yet, the fact one can conceive of an impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge. Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id. at 801.

Missouri's flag desecration statute provides:

1. Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the flag of the state of Missouri is guilty of the crime of flag desecration.

Mo. Rev. Stat. § 578.095(1).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." United States v. Williams, 553 U.S. 285, 293 (2008). Here, the Missouri statute requires the actor to "purposefully and publicly" desecrate the American or Missouri flag to face criminal liability. These requirements ensure the unintended desecration of a flag or the private desecration of a flag will not be punished and, therefore, demonstrate that expressive conduct is the statute's target. Public desecration of a flag is more likely to involve expressive conduct than a private desecration. Individuals wishing to convey a message are more likely to do so

-11-

publicly, as private attempts will likely fail to express a message. Similarly, the accidental and unknowing desecration of a flag undoubtedly will not express any message, and there would be no criminal liability under the statute for such an act. The presence of the intent and public elements demonstrates Missouri intended to regulate expressive conduct.

After construing the statute, the second step is to examine whether the statute criminalizes a "substantial amount" of expressive activity. Williams, 553 U.S. at 292. The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973), suffices to invalidate all enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression," id. at 613. See also Virginia v. Black, 538 U.S. 343, 367 (2003).

This regulation criminalizes a substantial amount of expressive activity. It is hard to imagine any scenario in which the elements of the statute would be met and yet the actions would constitute non-expressive conduct. Missouri argues § 578.095 is directed only at non-expressive conduct and offers the unlikely hypothetical of a tired person dragging a flag through the mud, aware his actions would likely offend others, but not intending to communicate anything. Yet, Missouri fails to point to an actual instance of the enforcement or threatened enforcement of § 578.095 with respect to non-expressive conduct. By contrast, the district court found at least three instances in which § 578.095 had been applied to protected speech. The district court also noted that § 578.095 may have had a chilling effect on other expressive conduct. The fact demonstrates a "substantial amount" of expressive conduct is prohibited by § 578.095.

Finally, we must ask whether the statute is "readily susceptible" to a limiting construction which would render it constitutional. Virginia v. Am. Booksellers Ass'n,

-12-

484 U.S. 383, 397 (1988). Missouri proposes the statute be limited to only non-expressive conduct. Missouri points to a Pennsylvania Supreme Court decision declining to find a state flag desecration statute facially unconstitutional. Commonwealth of Pa. v. Bricker, 666 A.2d 257 (Pa. 1995). However, Pennsylvania's statute was distinguishable from § 578.095 in that it "explicitly exempt[ed] from punishment any desecration done as part of 'any patriotic or political demonstration or decorations.'" Id. at 260 (quoting 18 Pa. Const. Stat. § 2102(b)(4)). There exists no plausible way for the court to read such a limitation into Missouri's statute. The statute is clear: Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon, or otherwise desecrates the national flag of the United States or the state flag of the state of Missouri is guilty of the crime of flag desecration. No limiting construction would be consistent with any plausible understanding of the legislature's intent. Striking any word would only make the statute more broad, not less. And no term can logically be construed in a way to render it constitutional. Unlike Pennsylvania's statute, nothing in Missouri's statute expressly exempts expressive conduct.

Thus, we conclude Mo. Rev. Stat. § 578.095 is not susceptible to an appropriate narrowing construction, and, therefore, the district court did not err in holding the statute to be facially unconstitutional. Having made this determination, it is unnecessary to consider whether the statute is also unconstitutionally vague.

IV

We are next asked to review the district court's award of attorneys' fees against Officer Peters and the State of Missouri. We review de novo the legal issues related to an award of attorneys' fees, while the actual award is reviewed for an abuse of discretion. See Pendleton v. QuikTrip Corp., 567 F.3d 988, 994 (8th Cir. 2009); Williams v. City of Carl Junction, Mo., 523 F.3d 841, 843 (8th Cir. 2008).

A

Officer Peters and Missouri first contend the district court abused its discretion when it failed to apportion the attorneys' fees between the two and instead held them both jointly and severally liable. In a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The decision to award attorneys' fees under § 1988 "rests with the broad discretion of the district court and will not be reversed absent an abuse of discretion." Harmon v. City of Kansas City, Mo., 197 F.3d 321, 329 (8th Cir. 1999).

Although the district court had discretion to apportion attorneys' fees between Officer Peters and Missouri, it was not obligated to do so. Here, the district court considered the arguments for apportioning the fees but decided to apply the general rule that non-prevailing defendants are to be held jointly and severally liable for attorneys' fees and costs. Due to the facts of this case and the well-stated reasons in its order, we cannot say the district court abused its discretion in so ruling.

B

Officer Peters and Missouri next contend the district court abused its discretion in failing to reduce Snider's attorneys' hourly rates when calculating the award. The district court determined the reasonable attorneys' fees included a St. Louis locality standard rate, not a Cape Girardeau locality rate.

The starting point in determining an attorneys' fee award under § 1988 is the lodestar, which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. Farmer's Co-op Co. v. Senske & Son Transfer Co., 572 F.3d 492, 500 (8th Cir. 2009). A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Little Rock Sch.

Dist. v. Arkansas, 674 F.3d 990, 995 (8th Cir. 2012). In a case where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case. Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001).

Here, the district court noted "[t]o limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." Casey v. City of Cabool, Mo., 12 F.3d 799, 805 (8th Cir. 1993). Snider produced evidence he could not secure competent counsel in the Cape Girardeau community. Further, Snider's attorneys submitted affidavits stating their hourly rates were within or below the market rates for attorneys with comparable experience. The court noted the attorneys had expertise in First Amendment litigation, which provided additional support for higher hourly rates. Thus, we conclude the district court did not abuse its discretion in awarding attorneys' fees based on the rate for the St. Louis legal market, instead of Cape Girardeau.

V

Finally, we consider whether the district court erred in granting summary judgment in favor of Cape Girardeau. Snider argues the district court erred in holding that Cape Girardeau did not have a policy of criminalizing expressive conduct and did not inadequately train and supervise its officers. A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right or if the municipality failed to adequately train its employees. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Snider first attempts to establish <u>Monell</u> liability based upon the flag desecration ordinance enacted by Cape Girardeau, which is identical to Mo. Rev. Stat. § 578.095.  However, as the district court observed, Snider was not arrested for a violation of the Cape Girardeau ordinance, but for a violation of § 578.095.  Thus, he cannot establish a causal connection between his arrest and the city ordinance.

Snider also claims Cape Girardeau failed to properly train and supervise Officer Peters.  The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  <u>City of Canton</u>, 489 U.S. at 388. To establish a claim for "custom" liability, Johnson must demonstrate:  (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.  <u>Johnson v. Douglas Cnty. Med. Dep't</u>, 725 F.3d 825, 828 (8th Cir. 2013).

The district court properly rejected Snider's argument regarding Cape Girardeau's failure to train Officer Peters.  As the district court observed, Cape Girardeau was not responsible for training Officer Peters.  Instead, state law requires that all officers be trained by the Missouri Department of Public Safety.  Further, Officer Peters participated in the required and state-approved 600-hour initial training program at Southeast Missouri State University and received continuing education training from approved providers.  Cape Girardeau was not responsible for the training program's curriculum.  Thus, we cannot say the district court erred in holding that Cape Girardeau was not deliberately indifferent to Snider's constitutional rights.

-16-

## VI

Based on the foregoing, we affirm the judgment of the district court and the award of attorneys' fees.

_____